IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

LE CHRISTIAN STEPTOE,
       Plaintiff,

  -v.-                  5:09-CV-1132
                         (NPM)(DEP)

THE CITY OF SYRACUSE (OFFICER
PAM OTIS AND DON GROTH) and
THE GENESEE GRANDE HOTEL,

       Defendants.

---

APPEARANCES:

LeChristian Steptoe
Plaintiff, *pro se*
1108 East Genesee Street
Apt. 302
Syracuse New York 13210

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

I.  BACKGROUND

   The clerk has sent to the court for review an amended complaint

submitted for filing by plaintiff LeChristian Steptoe. Dkt. No. 7.

Accompanied by an application to proceed *in forma pauperis*, on October

1

8, 2009 plaintiff originally filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, naming two defendants, the Genesee Grande Hotel ("Genesee Grande" or "Hotel") and the City of Syracuse, and alleging violations of his constitutional rights arising out of an incident that occurred on September 22, 2009 at the Hotel and his subsequent arrest for trespass. *See* Dkt. Nos. 1 and 2. After reviewing plaintiff's initial filings, though granting plaintiff's application to proceed *in forma pauperis*, the court dismissed the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), which requires that when a plaintiff seeks to proceed *in forma pauperis,* the court must dismiss the case if it determines, among other things, that the action is frivolous or malicious or fails to state a claim on which relief may be granted. *See* Decision and Order, dated Nov. 17, 2009 (Dkt. No. 6). In so doing, the court determined that plaintiff had failed to state a claim under section 1983 against the Genesee Grande because he had failed to allege any nexus between the State of New York and the challenged actions of the Hotel and, to the extent that he was trying to make a claim for conspiracy, he had failed to plead specific facts showing an agreement and concerted action between the Hotel and the City of Syracuse. With regard to the City of Syracuse, the court found the plaintiff's complaint

insufficient insofar as his claims were premised solely upon a theory of *respondeat superior*. In deference to plaintiff's *pro se* status, however, the dismissal of the complaint was with leave to replead.

II. <u>DISCUSSION</u>

In addition to the City of Syracuse, the plaintiff's amended complaint now names two individual officers employed by the City of Syracuse Police Department, Pam Otis and Don Groth, alleging that both of those defendants were also employed by the Hotel and working as part-time security officers at the time of the alleged violations of his constitutional rights.

It is well-established that persons may not be held liable under section 1983 unless it can be established that they have acted under the color of state law. *See*, *e.g.*, *Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under § 1983); *Wise v. Battistoni*, 92-Civ-4288, 1992 WL 380914, *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).[1] The courts frequently have been called upon to interpret the term "under color of law" in the context of off-duty police officers. *Claudio v. Sawyer*, No. 08 Civ. 8994, 2009 WL 4929260, at * 3

---

[1] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

3

(S.D.N.Y. Dec. 23, 2009) (citing and quoting *Pritchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)) (other citations omitted).  The relevant inquiry is whether the officer "albeit off-duty, nonetheless invokes the real or apparent power of the police department [or] perform[s] duties generally prescribed for police officers." *Pritchell*, 13. F.3d at 548 (citations omitted).  In making its analysis, the court must look to the totality of circumstances surrounding the officer's acts, including whether the officer identified himself or herself as a police officer; whether the plaintiff was aware that the defendants were police officers; whether the defendants detained or questioned the plaintiff in the scope of employment as police officers; and, if the defendants drew their firearms or arrested the plaintiff. *Claudio*, 2009 WL 4929260, at * 3; *see also, Dean v. City of Buffalo*, 579 F. Supp.2d 391, 406 (W.D.N.Y. 2008).

The amended complaint alleges that while working for the Hotel defendants Otis and Groth, on separate occasions, wearing their official police uniforms, violated plaintiff's constitutional rights.  Plaintiff alleges that the City of Syracuse allowed its police officers to engage in such secondary employment and that it failed to properly train and supervise the individual defendants.  Liberally construing plaintiff's *pro se* complaint,

as the court must at this juncture, *Barnum v. Clark*, 927 F.2d 698, 702 (2d Cir. 1991), the amended complaint can be interpreted to allege that at the time of the alleged constitutional violations Otis and Groth were acting pursuant to their authority as City of Syracuse Police officers in accordance with an official policy or custom, thereby sufficiently alleging claims against these defendants under section 1983.

With respect to the Genesee Grande, "a private employer may be held liable under § 1983 for the constitutional torts of its employees where the plaintiff proves that the employee acted pursuant to the employer's official policy of some nature." *Martin v. Lociccero*, 917 F. Supp. 178, 184 (W.D.N.Y. 1995) (citing *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990)). A private employer may also be liable where it was jointly engaged with state officials in the alleged unconstitutional conduct. *Martin*, 917 F. Supp. at 184 (citing *Lee v. Town of Estes Park, Colorado v. Sparks*, 820 F.2d 1112, 1114 (10th Cir. 1987)); *see also Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) ("To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff the rights

guaranteed by federal law."). The amended complaint alleges that the Hotel enlisted the state's assistance by hiring City of Syracuse police officers and that it instructed these individuals to violate plaintiff's constitutional rights. Broadly construed, plaintiff's allegations are sufficient to state a claim under section 1983 against the Genesee Grande.

III.   CONCLUSION

After carefully reviewing plaintiff's amended complaint and the applicable law, without ruling on the merits of plaintiff's claims, the court concludes that plaintiff has sufficiently stated a claim against defendants to avoid dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

WHEREFORE, it is hereby

ORDERED, that the clerk shall issue summonses and forward them, along with copies of the amended complaint and packets containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon the named defendants. The clerk shall forward a copy of the summons and amended complaint by mail to the Office of the Corporation Counsel for the City of Syracuse together with a copy of this decision and

order; and it is further

ORDERED, that a formal response to plaintiff's amended complaint be filed by the defendants or their counsel as provided for in the Federal Rules of Civil Procedure subsequent to service of process on the defendants; and it is further

ORDERED, that the clerk is directed to schedule a Rule 16 conference; and it is further

ORDERED, that any paper sent by a party to the court or the clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel.  **Any letter or other document received by the clerk or the court which does not include a certificate of service which clearly states that an identical copy  was served upon all opposing parties or their attorneys is to be returned, without processing, by the clerk.**  Plaintiff shall also comply with any requests by the clerk's office for any documents that are necessary to maintain this action.  All motions shall comply with the local rules of practice of the Northern District; and it is further

ORDERED, that the clerk serve a copy of this order and General Order 25 on plaintiff by regular mail.

Dated:      March 25, 2010

_____
David E. Peebles
U.S. Magistrate Judge



Page 1

Not Reported in F.Supp., 1992 WL 380914 (S.D.N.Y.)
(Cite as: 1992 WL 380914 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Anthony F. WISE, Plaintiff,
v.
John BATTISTONI, et al., Defendants.
**No. 92 CIV. 4288 (PKL).**

Dec. 10, 1992.

*MEMORANDUM ORDER*

LEISURE, District Judge.

**\*1** This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Anthony F. Wise on behalf of his daughter, Wakeva T. Wise, who is a minor. Plaintiff is appearing in this action *pro se.* This matter was referred to the Honorable Kathleen A. Roberts, United States Magistrate Judge, Southern District of New York, on June 12, 1992, for general pre-trial supervision and resolution of dispositive motions. By a Report and Recommendation dated November 2, 1992, Magistrate Judge Roberts recommended that the Court grant the motion of defendant Russell A. Schindler, Esq., for an order dismissing the complaint as to him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the complaint fails to state a cause of action upon which relief may be granted.

This action is based on actions taken by the Dutchess County, New York, Department of Social Services and proceedings in the Family Court of Dutchess County that resulted in the adoption of plaintiff's daughter by defendants Jacob and Mamie Hill and her eventual placement at the Hillcrest Educational Center in Pittsfield, Massachusetts. Although the complaint contains no allegations against Schindler, documents annexed to the complaint indicate that Schindler or one his partners in the firm of Schisler, Sall & Schindler represented plaintiff in some or all of the Family Court proceedings. Magistrate Judge Roberts recommended that the complaint be dismissed as against Schindler because the complaint failed to allege that the defendant acted under color of a state "statute, ordinance, regulation, custom, or usage," as required by section 1983. *See* Report and Recommendation at 3. Plaintiff filed timely objections to the Report and Recommendation, arguing that:

[T]his defendant had a duty to act and he breached that duty when he failed to act.

....

[H]e breached that duty to perform in a professional manner.

*See* Plaintiff's Objections to Report and Recommendation at 2.

It is well settled that an attorney's representation of a party to a court proceeding does not satisfy the section 1983 requirement that the defendant is alleged to have acted under color of state law absent special circumstances suggesting concert of action between the attorney and a state actor. This principle applies even where the attorney was appointed by the court. *See, e.g., Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Dahlberg v. Becker,* 748 F.2d 85 (2d Cir.1984), *cert. denied,* 470 U.S. 1084 (1985). Thus, the complaint can survive a motion to dismiss pursuant to Rule 12(b)(6) only if it alleges a conspiracy including the private actor and state actors such that "the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State." *Lugaar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982); *see also National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 199 (1988); *Zemsky v. City of New York,* 821 F.2d 148, 151-52 (2d Cir.1987) (conclusory allegations of conspiracy insufficient), *cert. denied,* 484 U.S. 965 (1987); *Conway v. Village of Mount Kisco,* 750 F.2d 205, 214 n. 12 (2d Cir.1984), *reaff'd,* 758 F.2d 46

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 380914 (S.D.N.Y.)
(Cite as: 1992 WL 380914 (S.D.N.Y.))

(2d Cir.1985), *cert. dismissed,* 479 U.S. 84 (1986).

**\*2** As noted above, the complaint in this action contains no allegations against defendant Schindler. The Court is cognizant of the principle that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." *Gomes v. Avco Corp.,* 964 F.2d 1330, 1335 (2d Cir.1992); *accord Haines v. Kerner,* 404 U.S. 519 (1972); *LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991). However, even affording a liberal reading to the complaint and the exhibits attached thereto, the Court can discern no allegation that Schindler acted under color of state law. As noted by Magistrate Judge Roberts:

It is well established that "where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981); *see also Gutierrez v. Vergari,* 499 F.Supp. 1040, 1052 (S.D.N.Y.1980); *Child v. Beame,* 417 F.Supp. 1023, 1025 (S.D.N.Y.1976).

*See* Report and Recommendation at 3. Further, the Second Circuit has repeatedly reaffirmed the principle that "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992); *accord Zemsky,* 821 F.2d at 151-52. Plaintiff's failure to allege facts demonstrating that defendant Schindler acted under color of state law is a defect compelling dismissal of the complaint.

CONCLUSION

For the foregoing reasons, the Court hereby adopts in whole the Report and Recommendation of the Honorable Kathleen A. Roberts, United States Magistrate Judge, Southern District of New York, dated November 2, 1992, and grants the motion of defendant Russell A. Schindler, Esq., for an order pursuant to Fed.R.Civ.P. 12(b)(6) dismissing the complaint on the grounds that the complaint fails to state a cause of action upon which relief may be granted. Plaintiff is granted leave to file an amended complaint with respect to Russell A. Schindler, Esq., within forty-five (45) days.

SO ORDERED

S.D.N.Y.,1992.
Wise v. Battistoni
Not Reported in F.Supp., 1992 WL 380914 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

United States District Court,
S.D. New York.
Lisa CLAUDIO, as Administrator of the Estate of Jayson Tirado, deceased, Jaylene Tirado, an infant by her mother and natural guardian, Lisa Claudio, and Irene Tirado, Plaintiffs,
v.
Sean SAWYER and The City of New York, Defendants.
**No. 08 Civ. 8994(DC).**

Dec. 23, 2009.

**Background:** Family of motorist shot and killed by off-duty police officer brought § 1983 action against officer and city, alleging officer was acting in his official capacity during shooting, that city was liable under *Monell*, and that city was liable for negligence under New York law. City moved to dismiss for failure to state a claim.

**Holdings:** The District Court, Chin, J., held that:
(1) there was no evidence that officer was on-duty or actually acting in his capacity as a police officer at time of shooting, and
(2) city was not liable under *Monell*.

Motion granted.

West Headnotes

**[1] Civil Rights 78  1304**

78 Civil Rights
    78III Federal Remedies in General
        78k1304 k. Nature and elements of civil actions.
Most Cited Cases
There are two essential elements of a § 1983 claim: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C.A. § 1983.

**[2] Civil Rights 78  1326(8)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
There is no bright line test for distinguishing personal pursuits from activities taken under color of law and the relevant question in deciding color of law in an § 1983 action against an off duty police officer is not whether the officer was on or off duty when the challenged incident occurred, but whether the officer albeit off-duty, nonetheless invokes the real or apparent power of the police department or performs duties prescribed generally for police officers. 42 U.S.C.A. § 1983.

**[3] Civil Rights 78  1326(8)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
In determining whether an off-duty police officer acted under color of law, the court, in a § 1983 action, is to look at the totality of the circumstances surrounding the officer's acts, with attention to the nature of the officer's acts, rather than simply the officer's duty status, and the relationship of that conduct to the officer's official duties. 42 U.S.C.A. § 1983.

**[4] Civil Rights 78  1326(8)**

78 Civil Rights

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

78III Federal Remedies in General
    78k1323 Color of Law
      78k1326 Particular Cases and Contexts
        78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
Factors to be considered in a § 1983 action when determining whether an off-duty police officer acted under color of law include whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work. 42 U.S.C.A. § 1983.

**[5] Civil Rights 78   1326(2)**

78 Civil Rights
    78III Federal Remedies in General
      78k1323 Color of Law
        78k1326 Particular Cases and Contexts
          78k1326(2) k. Officers and public employees, in general. Most Cited Cases
An officer can purport to exercise official authority within meaning of § 1983 by intervening in a dispute pursuant to a duty imposed by department regulations. 42 U.S.C.A. § 1983.

**[6] Civil Rights 78   1326(8)**

78 Civil Rights
    78III Federal Remedies in General
      78k1323 Color of Law
        78k1326 Particular Cases and Contexts
          78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
Even if an altercation was private in nature, an off-duty police officer will be considered to be acting under color of law within meaning of § 1983 if the officer responded by invoking his or her authority. 42 U.S.C.A. § 1983.

**[7] Civil Rights 78   1351(1)**

78 Civil Rights
    78III Federal Remedies in General
      78k1342 Liability of Municipalities and Other Governmental Bodies
        78k1351 Governmental Ordinance, Policy, Practice, or Custom
          78k1351(1) k. In general. Most Cited Cases
A municipality is subject to liability for damages under § 1983 when an official municipal policy or custom contributes to a constitutional deprivation. 42 U.S.C.A. § 1983.

**[8] Civil Rights 78   1352(1)**

78 Civil Rights
    78III Federal Remedies in General
      78k1342 Liability of Municipalities and Other Governmental Bodies
        78k1352 Lack of Control, Training, or Supervision; Knowledge and Inaction
          78k1352(1) k. In general. Most Cited Cases
The failure to train or supervise a municipal employee may be properly thought of as a city policy or custom that is actionable under § 1983. 42 U.S.C.A. § 1983.

**[9] Civil Rights 78   1352(1)**

78 Civil Rights
    78III Federal Remedies in General
      78k1342 Liability of Municipalities and Other Governmental Bodies
        78k1352 Lack of Control, Training, or Supervision; Knowledge and Inaction
          78k1352(1) k. In general. Most Cited Cases
*Monell* does not provide a separate cause of action under § 1983 for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation. 42 U.S.C.A. § 1983.

**[10] Civil Rights 78   1351(1)**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(1) k. In general. Most Cited Cases
Once a district court properly finds no underlying constitutional violation in a § 1983 action, its decision not to address the municipal defendant's liability under *Monell* is entirely correct. 42 U.S.C.A. § 1983.

**[11] Civil Rights 78    1326(8)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
There was no evidence that officer was on-duty or actually acting in his capacity as a police officer, even if officer was using his department-issued weapon, as required to support plaintiffs' § 1983 claim that officer acted under color of law when, while off duty, he shot and killed a motorist after a traffic altercation. 42 U.S.C.A. § 1983.

**[12] Civil Rights 78    1326(8)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
An off-duty police officer effectuating a traffic stop is also considered to be acting under the color of law within meaning of § 1983. 42 U.S.C.A. § 1983.

**[13] Civil Rights 78    1351(4)**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(4) k. Criminal law enforcement; prisons. Most Cited Cases
City was not liable in § 1983 action for police officer's actions in shooting a motorist following a traffic altercation, where officer had not been acting under color of law at time of shooting, and thus there was no independent constitutional violation, as required to establish municipal liability under *Monell*. 42 U.S.C.A. § 1983.

**[14] Civil Rights 78    1326(8)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(8) k. Police or peace officers; prisons. Most Cited Cases
Where an off-duty officer did not act under color of law within meaning of § 1983, the injury inflicted on the victim is one of private violence. 42 U.S.C.A. § 1983.

**[15] Civil Rights 78    1351(1)**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(1) k. In general. Most Cited Cases
Without a state actor, there can be no independent constitutional violation, and if there is no independent constitutional violation, a *Monell* claim against a city will necessarily fail. 42 U.S.C.A. § 1983.

Queller, Fisher, Washor, Fuchs & Kool LLP, by Matthew J. Maiorana, Esq., New York, NY, for Plaintiffs.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, by Brian G. Maxey, Esq., Assistant Corporation Counsel, New York, NY, for the City of New York.

*MEMORANDUM DECISION*

CHIN, District Judge.

**\*1** On October 21, 2007, at approximately 5 a.m., Jayson Tirado and two friends were in a car on the FDR Drive in Manhattan. Tirado was driving. An accident in the vicinity of 117th Street caused traffic to be diverted off the drive. As Tirado was exiting on 116th Street, he cut off another vehicle, driven by defendant Sean Sawyer, who, unbeknownst to Tirado and his friends at the time, was an off-duty police officer. Tirado and Sawyer exchanged words, and an encounter ensued. It ended when Sawyer drew a pistol and shot and killed Tirado. Sawyer, who purportedly was intoxicated, left the scene.

In this case, Tirado's survivors, plaintiffs Lisa Claudio, Jaylene Tirado, and Irene Tirado, sue Sawyer and the City of New York (the "City") for damages, pursuant to 42 U.S.C. § 1983, alleging that Sawyer and the City violated Tirado's civil rights under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiffs also assert claims under New York law.

Plaintiffs contend that: (1) Sawyer acted under color of law when he shot and killed Tirado; (2) the City is liable under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because Tirado's death was caused, in part, by the City's failure to adequately address the problem of off-duty police officers improperly discharging their weapons while under the influence of alcohol; and (3) the City is liable for Sawyer's actions under New York law for negligence in hiring and employing Sawyer and under the doctrine of *respondeat superior*.

The City moves to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is granted. First, the amended complaint fails to sufficiently allege that Sawyer was acting under color of law. Plaintiffs do not allege that Sawyer sought in any way to invoke his authority as a police officer: he was off-duty, he did not display a badge, he did not identify himself as a police office, and he never sought to arrest Tirado. Hence, the altercation was a purely private one. Second, a municipality is liable under Monell only where there is an underlying constitutional violation committed by someone acting under color of law. Here, as the amended complaint fails to allege facts to establish that Sawyer was a state actor, the City cannot be liable under Monell. Third, while it is plausible that plaintiffs may have claims against the City under state law, they must pursue those claims in state court. The amended complaint is dismissed.

*BACKGROUND*

**A.** *The Facts*

For purposes of this motion, the facts alleged in the amended complaint are assumed to be true.

On October 21, 2007, Tirado was shot and killed by Sawyer, an off-duty police officer, in the vicinity of First Avenue and 117th Street in Manhattan. (Am. Compl. ¶ 22). Prior to the shooting, Sawyer had consumed alcohol and was under the influence of alcohol. (*Id.* ¶¶ 29-30). At the time of the incident, Tirado was driving a Honda Civic with two passengers, Jason Batista and Anthony Mencia. (*Id.* ¶ 24). Sawyer was driving a Nissan Xterra. (*Id.* ¶ 25). Tirado and his two passengers were unarmed. (*Id.* ¶¶ 31-33). Sawyer fired a number of shots from his Glock 9mm pistol at Tirado. (*Id.* ¶ 26). One bullet struck Tirado in the back, killing him. (*Id.* ¶ 28, 34). Sawyer left the scene without reporting to the police that he had fired his weapon. (*Id.* ¶ 37).

**\*2** Approximately 19 hours later, about 1:00 a.m. on October 22, 2007, Sawyer approached a police car, complained of chest pain, and requested an ambulance. (*Id.* ¶ 38). Sawyer informed the sergeant and officer in the police car that he might have been involved in a fatal shooting the night before. (*Id.* ¶ 38). Sawyer was not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

arrested, but the matter was later presented to a grand jury. (*Id.* ¶ 39). On July 10, 2008, a grand jury declined to indict Sawyer. (*Id.*).

At all relevant times, the City had a "custom" of encouraging its police officers, including Sawyer, to carry and use firearms while off-duty. (*Id.* ¶¶ 55, 58). In fact, the use of firearms by off-duty officers was quite common. "With the Police Department reporting 227 off-duty shooting incidents and 1037 total shooting incidents, over a seven-year period, there was an off-duty shooting roughly every 11 days." (*Id.* ¶ 59). In addition, the City was well aware that police officers regularly "consumed alcohol" while armed off-duty, even though the City's written rules officially prohibited the practice. (*Id.* ¶¶ 68-71). Though the City provided training for the handling and use of firearms, the training "did not ensure that police officers, including Office Sawyer, [could] effectively use their firearm in real-life situations." (*Id.* ¶¶ 49-50). The City was aware that this training was not sufficient, and that a great percentage of shooting incidents involve unarmed civilians. (*Id.* ¶¶ 51, 53). "[I]n 77% of the incidents where police officers fired their weapons at civilians between 1999 and 2006, the officers were the only ones shooting, with officers often shooting at unarmed civilians." (*Id.* ¶ 53).

**B.** *Procedural History*

Plaintiffs commenced this action on October 22, 2008. On March 3, 2009, the City requested leave to file a motion to dismiss. I conducted a pre-motion conference at which the City's proposed motion was discussed, and I granted plaintiffs leave to amend their complaint to take into account the issues raised by the City. Plaintiffs filed an amended complaint on March 17, 2009. This motion followed.

*DISCUSSION*

**I.** *12(b)(6) Motion to Dismiss Standard*

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court in *Iqbal* set out a "two-pronged" approach for courts considering a motion to dismiss. *Id.* at 1950.

First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See id.* The court considers only the factual allegations in the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004). Legal conclusions must be supported by factual allegations. *Iqbal,* 129 S.Ct. at 1949. Pleadings that are "no more than conclusions are not entitled to the assumption of truth." *Id.* at 1950.

**\*3** Second, the court determines whether the "well-pleaded factual allegations ... plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Generally, to withstand a motion to dismiss, a § 1983 complaint must set forth specific factual allegations indicating a deprivation of constitutional rights. *See Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) ( "[B]road, simple, and conclusory statements are insufficient to state a claim under § 1983."); *Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

**II.** *Federal Claims*

**A.** *Applicable Law*

**1.** *Color of Law*

[1]Section 1983 creates a civil cause of action against a party "who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. There are two essential elements of a § 1983 claim: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

[2] In the context of off-duty police officers, "[c]ourts have had frequent occasion to interpret the term 'color of law' for the purposes of section 1983 actions, and it is by now axiomatic that under 'color' of law means under 'pretense' of law and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.' " *Pitchell,* 13 F.3d at 548. (citing *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). "[T]here is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law" and the relevant question in deciding color of law is not whether the officer "was on or off duty when the challenged incident occurred," but whether the officer "albeit off-duty, nonetheless invokes the real or apparent power of the police department" or "perform[s] duties prescribed generally for police officers." *Id.* (citations omitted).

**\*4** [3][4] The court is to look at the "totality of the circumstances surrounding the officer's acts, with attention to the nature of the officer's acts (rather than simply the officer's duty status) and the relationship of that conduct to the officer's official duties." *Lizardo v. Denny's, Inc.,* No. 97 Civ. 1234(FJS), 2000 WL 976808, at *9 (N.D.N.Y. July 13, 2000) (citing *Pitchell,* 13 F.3d at 548). Factors to be considered when determining whether an off-duty police officer acted under color of law include "whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work." *Wahhab v. City of New York,* 386 F.Supp.2d 277, 288 (S.D.N.Y.2005) (citing *Manning v. Jones,* 696 F.Supp. 1231, 1235 (S.D.Ind.1988)).

[5][6] An officer can also purport to exercise official authority by intervening in a dispute pursuant to a duty imposed by department regulations. *See Barna v. City of Perth Amboy,* 42 F.3d 809, 816 (3d Cir.1994); *Stengel v. Belcher,* 522 F.2d 438, 440-41 (6th Cir.1975). Even if the altercation was private in nature, an off-duty police officer will be considered to be acting under color of law if the officer responded by invoking his or her authority. *See Rivera v. La Porte,* 896 F.2d 691, 696 (2d Cir.1990) (holding that an off-duty corrections officer acted under color of law when he arrested and assaulted the plaintiff following a private argument during a traffic jam).

**2.** *Monell Liability*

[7][8] Under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality is subject to liability for damages under § 1983 when an official municipal policy or custom contributes to a constitutional deprivation. "[W]hen execution of a government's policy or custom ... inflicts [an] injury ... the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. The failure to train or supervise a municipal employee may be "properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

[9][10] Under Second Circuit case law, however, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) (emphasis in original). Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendant's liability under *Monell* [i]s entirely correct." *Id.*

**B.** *Application*

**1.** *Color of Law*

**\*5** [11] Despite the opportunity to address the deficiencies in their original complaint, plaintiffs have failed to plead facts in their amended complaint sufficient to support their allegation that Sawyer acted under color of law.

First, the amended complaint does not allege that Sawyer was on-duty or actually acting in his capacity as a police officer. Plaintiffs specifically allege that Sawyer was off-duty and driving a Nissan Xterra-not identified as a police vehicle-when the incident with Tirado occurred. (Am. Compl. ¶¶ 22, 25). They do not allege that Sawyer was on official police business or that the shooting occurred as a result of official police concerns.

Second, although an off-duty police officer who claims to exercise official authority will be found to have acted under color of law, *see Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) ("We have no doubt that when an officer identifies himself as a police officer and uses his service pistol, he acts under color of law."), here, the amended complaint does not allege that Sawyer purported to act with state authority when he confronted and then shot Tirado. The amended complaint does not allege that Sawyer identified himself as a police officer, either by flashing his badge or by announcing to Tirado or the other two passengers any time before, during, or after the shooting that he was a police officer or acting in that capacity. There is no indication that Tirado or his friends were aware that Sawyer was a police officer from his or his car's appearance, as there is no allegation that Sawyer was in uniform or that his car was a police vehicle. Unlike in *Lizardo,* where the court found that an off-duty officer working for a Denny's restaurant acted under color of law when he threatened to arrest the plaintiffs, there is no allegation in the amended complaint that Sawyer attempted to arrest Tirado. *Lizardo,* 2000 WL 976808, at *9.

[12] An off-duty police officer effectuating a traffic stop is also considered to be acting under the color of law. *See Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 475-76 (E.D.N.Y.2002) (holding that a plainclothed and intoxicated off-duty police officer on disability leave acted under color of law when he menaced the plaintiff into stopping car and showed his badge and identified himself as a police officer). Unlike the defendant in *Davis,* there is no indication that Sawyer issued any commands, showed his badge, or tried to effect a traffic stop.[FN1]

Plaintiffs allege that the City "at all relevant times, permitted, encouraged and expected Officer Sawyer to carry and use a firearm when off-duty." (Am. Compl. ¶ 54). Even accepting this allegation as true, and even assuming that Sawyer used his department-issued weapon in the shooting, courts require more to conclude that an officer was acting under color of law. *See Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir.1982) (holding that an officer who shot his wife and then committed suicide with his police handgun did not act under color of law even though the officer was required to carry the police gun at all times). The mere use of a department-issued weapon is not sufficient to hold that an off-duty officer was acting under color of law without more indicia of authority. *See Barna,* 42 F.3d at 819 ("To hold otherwise would create a federal cause of action out of any unauthorized use of a police-issue weapon, without regard to whether there are any additional circumstances to indicate that the officer was exercising actual or purported police authority.").

**\*6** Without such factual content, plaintiffs' amended complaint lacks the facial plausibility required to survive

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

a motion to dismiss. Accordingly, I conclude that the amended complaint fails to state a claim that Sawyer was acting under color of law.

### 2. *Monell* Liability

In their opposition memorandum, plaintiffs argue that even if Sawyer was not acting under color of law, the City was "undeniably a state actor" when it promulgated customs and policies that led to Tirado's death. (Pl. Oppo. Mem. at 9). Plaintiffs allege that the City failed to properly train and supervise Sawyer, and that it encouraged its officers to carry guns off-duty, even while drinking alcohol.

[13][14][15] Despite the tragic facts alleged in the complaint, Second Circuit case law holds that where an off-duty officer did not act under color of law, the injury inflicted on the victim is one of private violence. *See Pitchell,* 13 F.3d at 549. Without a state actor, there can be no "independent constitutional violation." If there is no "independent constitutional violation," a *Monell* claim against the City will necessarily fail. *Segal,* 459 F.3d at 219;*see also Pitchell,* 13 F.3d at 549. That is the case here. Because Sawyer did not act under color of law, there was no independent constitutional violation, and the shooting death of Tirado was an act of private violence. The City is not liable under *Monell* for the private acts of its employees.

Plaintiffs may have a plausible claim against the City on a negligence theory. Indeed, if plaintiffs' allegations are correct, off-duty shootings by police officers who abuse alcohol occur far too often, and, judging from the number of decisions that appear in the case law with similar fact patterns, it may be that the City has not done enough in terms of training and supervision to address the problem. But purely private action will not support a *Monell* claim under § 1983, and a claim against the City such as the one asserted here-based purely on private action by an off-duty police officer, without an underlying, independent constitutional claim-would have to be asserted as a state claim under state law. *See, e.g., Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir.1982) (holding that police officer who seriously wounded his wife and then committed suicide with his police handgun was not acting under color of law for purposes of § 1983 but upholding jury verdict that the City was liable in negligence).

### II. *State Law Claims*

"The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). With the dismissal of plaintiffs' federal § 1983 claims, there remains no independent jurisdictional basis for their state law claims. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims"). In addition, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir.2001); *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991). Accordingly, I decline to exercise supplemental jurisdiction over plaintiffs' state law claims against the City and dismiss them as well.

### *CONCLUSION*

*7 For the foregoing reasons, the City's motion to dismiss is granted. Although Sawyer has not appeared in the action, for the reasons set forth above, plaintiffs have not sufficiently alleged a federal claim as to him either. Accordingly, the federal claims against both defendants are dismissed with prejudice. The state law claims are dismissed without prejudice to refiling in state court. The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655
(Cite as: 2009 WL 4929260 (S.D.N.Y.))

FN1. The amended complaint does assert, in conclusory manner, that Sawyer was acting within the scope of and in furtherance of his employment with the City. (Am. Compl. ¶¶ 44, 45). Plaintiffs fail, however, to plead sufficient factual content to allow the Court to draw the inference that Sawyer was acting under color of law.

S.D.N.Y.,2009.
Claudio v. Sawyer
--- F.Supp.2d ----, 2009 WL 4929260 (S.D.N.Y.), 75 Fed.R.Serv.3d 655

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.