IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

LeCHRISTIAN STEPTOE,

                    Plaintiff,

                    Civil Action No.
v.                   5:09-CV-1132 (NPM/DEP)

THE CITY OF SYRACUSE and
THE GENESEE GRANDE HOTEL,

                    Defendants.

APPEARANCES:             OF COUNSEL:

FOR PLAINTIFF:

LeCHRISTIAN STEPTOE, *Pro Se*
1108 East Genesee Street
Apt. 302
Syracuse New York 13210

FOR DEFENDANT CITY OF
SYRACUSE:

HON. MARYANNE DOUGHERTY    JOSEPH DOYLE, ESQ.
Corporation Counsel               Assistant Corporation Counsel
233 East Washington Street
300 City Hall
Syracuse, NY 13202

FOR DEFENDANT THE GENESEE
GRANDE HOTEL:

COSTELLO, COONEY LAW FIRM    ROBERT CONNOLLY, ESQ.
500 Plum Street, Suite 300         PAUL FERRARA, ESQ.
Syracuse, NY 13204-1401

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff LeChristian Steptoe, a law school graduate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983 against defendants The City of Syracuse ("City") and The Genesee Grande Hotel ("Hotel") alleging deprivation of his civil rights.  The plaintiff's claims stem from his arrest in September of 2009 and subsequent prosecution for trespass, based upon his allegedly unauthorized presence at defendant Hotel.  As relief, his complaint seeks recovery of $30 million from defendant City and $20 million as against defendant Hotel.

Currently pending before the court in connection with the action are two matters.  The first is the latest in a series of discovery skirmishes that have arisen in the action; the current dispute surrounds plaintiff's failure to provide an oath with respect to responses to interrogatories propounded by defendant City, despite having been ordered by the court to do so.  The second involves summary judgment motions filed by the defendants, both of whom maintain that based upon the record before the court no reasonable factfinder could conclude that plaintiff's constitutional rights

2

were violated by the defendants.

Certain recent events associated with this action provide clear indication that the plaintiff, who has graduated and moved out of the area, has become disinterested in pursuing the claims in this action.  On the date set by the court for oral argument in connection with the discovery dispute, for example, plaintiff failed to appear.  He later contacted my chambers to advise that he no longer wishes to pursue his claims in this action, and has followed that verbal statement of his intentions with a letter in which he advises that he does not oppose the pending summary judgment motions.  Based upon these circumstances, and having reviewed defendants' motions for facial sufficiency and determined that they are meritorious, I recommend that summary judgment be granted and plaintiff's claims be dismissed.  Additionally, I recommend that the plaintiff be ordered to pay defendants' costs and attorney's fees associated with the most recent discovery-related motion.

I.      BACKGROUND[1]

At the times relevant to his claims the plaintiff was a resident of

---

[1]      In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Syracuse, New York.  Amended Complaint (Dkt. No. 7) ¶ 1.  The Genesee

Grande Hotel is a place of public accommodation located in Syracuse,

New York, offering hotel, dining, and bar services.   *See id.* at ¶¶ 4-6.

Steptoe has never been an overnight guest at the hotel, although he has

eaten at the hotel's restaurant at various times.  *Id.* at ¶¶ 4-8; Defendant

Hotel's Local Rule 7.1(a)(3) Statement (Dkt. No. 128-13) ¶ 28.[2]

Prior to September 22, 2009, when the events giving rise to

plaintiff's claims took place, employees of the defendant Hotel had

occasionally observed Steptoe in their establishment during odd, late-

night hours.  One such instance occurred at approximately 3:30 a.m. on a

morning when the plaintiff approached Kelly Whitney, a guest services

agent and the night-time auditor on duty at the time, seeking information

regarding services available at the Hotel.  Plaintiff's Exhibits (Dkt. No. 22)

Exh. 1.  After a brief conversation, during which Ms. Whitney ascertained

that Steptoe was not a guest at the Hotel, plaintiff left.  *Id.*  Plaintiff

returned, however, approximately two weeks later at about 1:00 a.m.,

again asking about services despite not being a guest at the Hotel. *Id.*  On

---

[2]      As will be seen, by failing to oppose defendants' summary judgment
motions plaintiff is deemed to have admitted the allegations set forth in their Local
Rule 7.1(a)(3) Statements.  *See* pp. 23 - 24, *post.*

yet another date plaintiff was observed by a different Hotel employee,

Joanna Ramsey, as he approached the front desk of the Hotel at

approximately 12:30 a.m., yet again inquiring about available services.

Plaintiff's Exhibits (Dkt. No. 22) Exh. 1.  On that occasion security was

called, and plaintiff was directed to leave the property.  *Id.*  Based upon

these incidents plaintiff was advised by both Hotel staff and security not to

enter the premises again.  Plaintiff's Exhibits (Dkt. No. 22) Exh. 1.

On the evening of September 22, 2009, plaintiff entered the Hotel

through a side entrance.  *Id.*  The door through which Steptoe gained

access to the facility leads to an outside dining patio that is enclosed by a

metal fence.  *Id.* at Exh. 2; *see also* Plaintiff's Exhibits (Dkt. No. 22) Exh.

13.  After observing the plaintiff enter the Hotel and walk through the main

level by means of security cameras, Ms. Whitney, who was working on

that evening, notified Pam Otis, an off-duty Syracuse City Police Officer

working a private security detail for the Hotel, of Steptoe's presence.[3]

Plaintiff's Exhibits (Dkt. No. 22) Exhs. 1, 2.

After entering the Hotel, plaintiff proceeded into the bar area where

_____

[3]     The defendant Hotel employs off-duty Syracuse City Police officers to patrol its parking lots at night in order to protect its guests' motor vehicles against theft and vandalism.  Defendant Hotel's Local Rule 7.1(a)(3) Statement (Dkt. No. 128-13) ¶ 27.

the bartender, Sherry MacCombie, was in the process of closing because

of the late hour and lack of customers in the premises.  MacCombie Aff.

(Dkt. No. 53) ¶¶ 4-5.[4]  After plaintiff expressed interest in purchasing

alcohol Ms. MacCombie requested identification; in response to that

directive, Steptoe produced a Massachusetts driver's license.  *Id.* at ¶¶ 5-

7; Plaintiff's Exhibits (Dkt. No. 22) Exh. 2.  At that point, Ms. Otis entered

the bar and, upon questioning, was informed that Steptoe desired to

purchase drinks.  MacCombie Aff. (Dkt. No. 53) ¶ 7; Plaintiff's Exhibits

(Dkt. No. 22) Exh. 2.  Ms. Otis then advised the plaintiff that if he was

there to have a drink he was welcome to stay, but if not he was

trespassing and would have to leave.  MacCombie Aff. (Dkt. No. 53) ¶ 8.

　　　After Ms. Otis left the bar area, Steptoe requested a shot of whiskey

from bartender MacCombie.  MacCombie Aff. (Dkt. No. 53) ¶ 9.  When

informed that it was the Hotel's policy not to sell shots of alcohol, as

evidenced by a sign posted above the cash register in the bar area,

---

[4]     An earlier affidavit signed by Sherry MacCombie was filed with the court
in connection with the Hotel's opposition to plaintiff's motion.  *See* Dkt. No. 44.
Because that affidavit contained a typographical error, suggesting that it was signed on
June 17, 2008, rather than June 17, 2010, however, the affidavit was resubmitted,
without substantive changes, after having again been signed and sworn to on August
26, 2010.  *See* Dkt. Nos. 49, 53.

plaintiff next inquired concerning the price of a beer; upon being advised

that it would cost him $4.50 to purchase a beer, Steptoe left without

ordering any drinks.  *Id.*

Plaintiff left the Hotel, but returned a short time later at

approximately 11:45 p.m. on the same evening and approached the front

desk, complaining to Ms. Whitney regarding the incident.  Plaintiff's

Exhibits (Dkt. No. 22) Exhs. 1, 2.  Ms. Otis was then summoned to the

lobby area; by the time she arrived plaintiff had already left the premises.

*Id.* at Exh. 2.  Upon investigating the matter, Officer Otis learned from

Joanna Ramsey, another Hotel employee, that she too had seen and

spoken with Steptoe on a prior occasion concerning his presence on Hotel

property and that at that time plaintiff was informed by Hotel security

personnel to leave and not return to the premises.[5]

Officer Otis filed a report regarding the incident and lodged a

_____

[5]      In addition to the encounters during the Fall of 2009, plaintiff also entered
the Hotel at approximately midnight on one occasion in May of 2009, wandering
through the lobby and around the Hotel premises and eventually entering the a men's
room.  Defendant Hotel's Local Rule 7.1(a)(3) Statement (Dkt. No. 128-13) ¶ 31; *see
also* Amended Complaint (Dkt. No. 7) ¶¶ 10-14.  Because Steptoe was not a guest of
the Hotel and the bar and restaurant were closed, a desk clerk called the Syracuse
Police Department to report the matter.  Defendant Hotel's Local Rule 7.1(a)(3)
Statement (Dkt. No. 128-13) ¶ 31.  After Syracuse police officers responded plaintiff
was informed that since he was not a guest in the Hotel he was required to make a
purchase in order to remain on the premises; plaintiff subsequently left the Hotel
without making a purchase.  *Id.* at ¶ 32.

violation information with the Syracuse City Court on September 23, 2009 accusing plaintiff of trespass, in violation of New York Penal Law § 140.05.  Plaintiff's Exhibits (Dkt. No. 22) Exhs. 2, 3.  A warrant for Steptoe's arrest was thereafter sought and obtained.  Amended Complaint (Dkt. No. 7) ¶¶ 55-56.  The plaintiff was subsequently arrested at 9:00 a.m. on October 2, 2009 by Syracuse Police Officer Nolan, and appeared in court concerning the matter an hour later, at which time he was released on his own recognizance.[6]  Plaintiff's Exhibits (Dkt. No. 22) Exh. 6; *see also* Amended Complaint (Dkt. No. 7) ¶ 89.  The charge against the plaintiff was ultimately dismissed by Syracuse City Court Judge Kate Rosenthal on December 15, 2009.  Plaintiff's Exhibits (Dkt. No. 22) Exh. 8.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on October 8, 2009 and, at the direction of the court, filed an amended complaint on December 21, 2009. Dkt. Nos. 1, 6, 7.  Plaintiff's complaint, as amended, names the defendant

---

[6]   The parties' recitations of the chronology of events surrounding plaintiff's arrest and ensuing court appearance are conflicting.  Plaintiff maintains that he was detained for nearly thirty hours before being brought before a judge.  Amended Complaint (Dkt. No. 7) ¶¶ 78, 89.  Plaintiff's version, however, is seemingly contradicted by the arrest report filed by Police Officer Nolan.  *See* Plaintiff's Exhibits (Dkt. No. 22) Exh. 6.  This potential discrepancy is not significant for purposes of resolving defendants' summary judgment motions.

City and defendant Hotel as the sole defendants and asserts nine

separate causes of action, alleging 1) negligence on the part of defendant

City; 2) violation of the plaintiff's Fourth Amendment rights by defendant

City; 3) violation of Fourth Amendment rights by defendant Hotel; 4) denial

of equal protection by defendant City; 5) deprivation of due process by

defendant City; 6) denial of equal protection by defendant Hotel; 7)

deprivation of due process by defendant Hotel; 8) intentional infliction of

emotional distress by defendant Hotel; and 9) intentional infliction of

emotional distress by defendant City.

A Uniform Pretrial Scheduling Order ("UPSO") was issued by the

court on May 21, 2010, establishing deadlines for the completion of

certain tasks leading up to the filing of dispositive motions by January 31,

2011.  Dkt. No. 21.  The dates set forth in that UPSO were subsequently

modified, resulting in a new discovery deadline of May 31, 2011 and a

revised motion filing deadline of July 15, 2011.  *See* Text Scheduling

Order dated 4/14/11.

On July 30, 2010, defendant City served a set of interrogatories

upon the plaintiff pursuant to Rule 33 of the Federal Rules of Civil

Procedure.  Plaintiff responded to those interrogatories on or about

August 30, 2010; those responses, however, though signed by the plaintiff, were not sworn to. *See* Doyle Aff. (Dkt. No. 71-1) Exh. E.

Defendant City moved on January 14, 2011 for various discovery-related relief including, *inter alia,* an order compelling plaintiff to answer the City's interrogatories under oath, Dkt. No. 71.   As a result of that motion a hearing was conducted on February 14, 2011.   During the hearing I advised the plaintiff that the defendant City was entitled to an oath with regard to his interrogatory responses; unfortunately, however, through inadvertence the order resulting from that hearing did not include a specific directive to that effect. *See* Dkt. No. 81.

The matter was the subject of a second motion to compel, filed by defendant City on March 28, 2011.  Dkt. No. 91.  A hearing was conducted in connection with that motion on April 13, 2011.  During that hearing the requirement under Rule 33 that interrogatory responses be given under oath was prominently discussed and reiterated to the plaintiff. That motion resulted in the issuance of an order on April 14, 2011 in which I directed, among other things, that the plaintiff provide a proper oath swearing to the contents of his interrogatory responses within fourteen days of the date of the order.  Dkt. No. 95.

10

On June 24, 2011, defendant City moved seeking various sanctions including dismissal of the action, a finding of contempt, a preclusion order, and costs and attorneys' fees, growing out of plaintiff's failure to comply with the court's April 14, 2011 order.  Dkt. No. 117.  That motion was followed by the filing by both defendants on June 15, 2011 of motions for summary judgment seeking dismissal of all of plaintiff's claims against them as a matter of law.  Dkt. Nos. 126, 128.

The pending discovery dispute was originally scheduled for a hearing to be held on July 27, 2011.  To accommodate a conflict on the part of the plaintiff, however, the hearing was rescheduled to August 3, 2011.  While defendants' attorneys were present on that adjourned date, plaintiff failed to appear at that hearing.  In light of plaintiff's conduct, I advised the parties of my intention to recommend that his complaint be dismissed under Rule 37 of the Federal Rules of Civil Procedure, and for failure to prosecute pursuant to Rule 41(b), and to award defendants costs and attorney's fees.

Within an hour after the time of the scheduled hearing date plaintiff telephoned chambers and advised my judicial assistant that in light of his present circumstances he no longer wishes to pursue his claims in the

action.  Plaintiff also indicated that he has moved, but was not willing to provide the court with his new address by telephone.  Plaintiff was informed that because of the pendency of summary judgment motions by both defendants, he could not simply unilaterally withdraw his claims, but would instead either have to advise the court that he does not oppose the entry of summary judgment, or enter into a stipulation with the defendants for dismissal of his claims pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.  As was previously indicated, plaintiff has since filed a letter with the court advising of a change in his circumstances, making pursuit of the action "overly burdensome and non-feasible" for him, and stating that he does not challenge the defendants' motions for summary judgment nor does he intend to pursue the claims in the action, further representing that he "abandoned[s] all claims asserted in this action."  Dkt. No. 131.   Defendants have since responded by requesting that if judgment is entered the matter remain open for purposes of enforcing a previous sanctions award against the plaintiff.  Dkt. Nos. 132, 134.

Defendants' pending summary judgment motion has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

12

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Defendants City's Motion to Compel Discovery

The rule governing interrogatories provides, in relevant part, that

"each interrogatory must, to the extent it is not objected to, be answered

separately and fully in writing under oath.  Fed. R. Civ. P. 33(b)(3).   The

rule, however, does not prescribe any particular form of verification.

*Zanowic v. Reno,* No. 97 Civ. 5292, 2000 WL 1376251, at *5 (S.D.N.Y.

Sept. 25, 2000).  The courts that have addressed the issue of the form

that an interrogatory oath must take appear to be in agreement that the

oath requirement may be satisfied either by having the statement affirming

the responses sworn to before a notary public or by providing a

declaration pursuant to 28 U.S.C. § 1746.[7]  *Id.*  If the latter course is

---

[7]    That section provides that

[w]herever, under any law of the United States or under any
rule, regulation, order, or requirement made pursuant to
law, any matter is required or permitted to be supported,
evidenced, established, or proved by the sworn declaration,
verification, certificate, statement, oath, or affidavit, in
writing of the person making the same (other than a
deposition, or an oath of office, or an oath required to be
taken before a specified official other than a notary public),
such matter may, with like force and effect, be supported,
evidenced, established, or proved by the unsworn
declaration, certificate, verification, or statement, in writing
of such person which is subscribed by him, as true under

13

selected, an unverified statement may suffice provided that it specifically states that the document is given under penalty of perjury and is true and correct.  28 U.S.C. § 1746; *McLaughlin v. Cohen*, 686 F. Supp. 454, 457 (S.D.N.Y. 1988) (citations omitted).

The oath requirement applicable to interrogatories has legal significance.  Courts have routinely refused to consider interrogatories that do not comport with that mandate.  *See, e.g., Trueman v. New York State Canal Corp.*, No. 09-CV-049, 2010 WL 681341, at *5 (N.D.N.Y. Feb. 24, 2010) (Treece, M.J.); *Miroglio S.P.A. v. Conway Stores, Inc.*, No. 05-CIV-00121, 2008 WL 4600984, at *6 (S.D.N.Y. Oct. 15, 2008) (signed interrogatory responses inadmissable at trial because not sworn to under oath); *Cabales v. United States*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970) *aff'd* 447 F.2d 1358 (2d Cir. 1971) (finding that an unsigned, unverified writing purporting to be plaintiff's answer did not qualify as answer under Rule 33).

---

penalty of perjury, and dated, in substantially the following form: . . . "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on (date). (Signature)".

28 U.S.C. § 1746.

In this instance, plaintiff's initial interrogatory responses to defendant City were not given under oath.  It is true that following the hearing on February 14, 2011 plaintiff attempted to provide proper responses, submitting a page dated April 4, 2011 stating "I, LeChristian Steptoe, plaintiff, in *Steptoe v. The City of Syracuse and the Genesee Grande Hotel*, hereby swear, that all factual statements which I have made in the interrogatory responses, which I have served upon the defendant City, on or about July 31st, 2010, are true and accurate, to the best of my knowledge."  *See* Plaintiff's Response to Sanction Motion (Dkt. No. 123) Exh. 1.  While an improvement over the earlier responses, which were merely signed, that statement does not fully satisfy the requirements of 28 U.S.C. § 1746 in that it does not specifically provide that the statement is being given under penalty of perjury.  *See McLauglin*, 686 F. Supp. at 457.

Based upon the foregoing chronology, it has been established to the court's satisfaction that despite being required under the terms of the court's April 14, 2011 order to do so, plaintiff has failed to comply with Rule 33 and provide a proper oath to the interrogatory responses served upon defendant City.  I must therefore next determine what sanction from

among the array authorized under Federal Rule of Civil Procedure 37(b),

should most appropriately result from plaintiff's conduct.

Rule 37(b) provides that the court may impose sanctions on a party

who fails "to obey an order to provide or permit discovery." Fed.R.Civ.P.

Rule 37(b). This rule provides a wide range of discretionary sanctions,

including striking a pleading, staying further proceedings, rendering a

default judgment, or treating a failure to obey as contempt of court.

Fed.R.Civ.P. 37(b)(2).  Quite obviously, under Rule 37 dismissal of a

recalcitrant plaintiff's claims is the severest of the available sanctions, and

should be imposed only in extreme situations. *Cross v. Vill. of*

*Cooperstown*, No. 04-CV-501, 2007 WL 3254269, at *3 (N.D.N.Y. Nov. 2,

2007) (Scullin, S.J.).  Moreover, when considering dismissal of claims

brought by a *pro se* plaintiff, the court must ensure that 1) the plaintiff's

non-compliance rises to the level of "willfulness, bad faith, or his own

fault"; 2) less drastic alternatives to dismissal are not available or are not

likely to be effective; and 3) the party whose case is in danger of dismissal

has been apprised of that possibility. *Id.* (citing *Nat'l Hockey League v.*

*Metropolitan Hockey Club, Inc.,* 427 U.S 639, 640, 96 S. Ct. 2778, 2779

(1976) and *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d

16

Cir. 1990), *cert. denied*, 499 U.S. 943, 111 S. Ct. 1404 (1991)).  Instead of

or in addition to the sanctions available under Rule 37(b), the court must

order the disobedient party to pay reasonable expenses, including

attorney's fees, caused by the failure, unless the failure was substantially

justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(2)(B); *Cower v. Albany Law School of Union Univ.*, No.

05-CV-924, 2007 WL 148758, at *5 (N.D.N.Y. Jan. 11 2007) (Homer,

M.J.) ("The determination whether to impose sanctions under Rule

37(b)(2) is discretionary.... The determination to award costs and

attorneys' fees, however, is mandatory with two exceptions").

In addition to Rule 37, the court has at its disposal both inherent

power, exercisable *sua sponte*, *see, e.g., Hall v. Flynn*, 829 F. Supp.

1401, 1403 (N.D.N.Y. 1993), *see also Lindsey v. Loughlin*, 616 F. Supp.

449, 453 (E.D.N.Y. 1985) (citing *Link v. Wabash R.R. County Independent

Sch. Dist.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 1389 (1962) ("The

authority of a court to dismiss *sua sponte* for lack of prosecution is general

and considered an 'inherent power', governed not by rule or statute or by

the control necessary vested in courts to manage their own affairs so as

to achieve the orderly and expeditious dispositive of cases.")), and specific

17

authority conferred under Rule 41(b) of the Federal Rules of Civil

Procedure, to dismiss a plaintiff's complaint for failure to comply with court

expectations and orders.  *Link*, 370 U.S. at 629-30, 82 S. Ct. at 1388.

This power to dismiss may be exercised when necessary to achieve

orderly and expeditious disposition of cases.  *See Freeman v. Lundrigen,*

No. 95-CV-1190, 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996)

(Pooler, J.) (citing *Rodriguez v. Walsh*, No. 92-CV-3398, 1994 WL 8688,

at *1 (S.D.N.Y., Jan. 14, 1994) (other citations omitted)).

        The decision to dismiss under Rule 41(b) for failure to comply with a

court order and/or to prosecute is informed by five factors, including (1)

the duration of the plaintiff's failure to comply with the court order, (2)

whether plaintiff was on notice that failure to comply would result in

dismissal, (3) whether the defendants are likely to be prejudiced by further

delay in the proceedings, (4) a balancing of the court's interest in

managing its docket with the plaintiff's interest in receiving a fair chance to

be heard, and (5) whether the judge has adequately considered a

sanction less drastic than dismissal.  *See Shannon v. Gen. Elec. Co.*, 186

F.3d 186, 193 (2d Cir. 1999) (failure to prosecute action) (citation and

internal quotation marks omitted); *Lucas v. Miles*, 84 F.3d 532, 535 (2d

Cir. 1996) (failure to comply with order of court) (citations omitted).  I have carefully evaluated these five factors and find that they weigh decidedly in favor of dismissal – a result that seems to square with the plaintiff's present intentions concerning the action.

Although proceeding *pro se,* plaintiff is not unsophisticated, having recently graduated from law school.  The requirement at issue – to accompany interrogatory responses – was explained to the plaintiff by the court twice, in detail, to no avail.  Despite this and the fact that plaintiff was previously sanctioned for bringing a meritless motion, plaintiff has nonetheless chosen to disregard the court's clear directive.  These circumstances, coupled with his failure to appear as directed to respond in person to defendant City's motion, represent a flagrant affront to the court and its powers and provide ample basis for an award of appropriate sanctions, which could include a finding of contempt as well as dismissal of plaintiff's complaint.  Despite the fact that dismissal for failure to comply with court directives would be amply justified in this case, in light of plaintiff's announced intention not to pursue his claims, I recommend that the court review the defendants' pending summary judgment motions and, if appropriate, enter a merits-based determination in defendants' favor

19

rather than dismissing plaintiff's complaint for failure to comply with the

court's prior orders, particularly in light of the preference that matters be

resolved on the merits rather than the basis of a technical deficiency.

*See, e.g., Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95, 96 (2d Cir. 1993);

*Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).  I further recommend,

however, that defendant City be awarded costs and attorney's fees

incurred as a result of having to file and argue the motion to compel

discovery, and additionally that defendant Hotel be permitted to recover

costs and attorney's fees as a result of having to appear in connection

with defendant City's motion. [8]

     B.    <u>Standard of Review</u>

Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure.  Under that provision, summary judgment is

warranted when "the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of

---

[8]      In the event that this recommendation is adopted, the court will then afford counsel for both defendants an adequate opportunity to file submissions quantifying the costs and attorney's fees resulting from the instant motion, and plaintiff will thereafter be permitted to respond to the requests.

law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of*

*Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

2004).  A fact is "material", for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.

　　　A party moving for summary judgment bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be

decided with respect to any essential element of the claim in issue; the

failure to meet this burden warrants denial of the motion.  *Anderson*, 477

U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In

the event this initial burden is met the opposing party must show, through

affidavits or otherwise, that there is a material issue of fact for trial.  Fed.

R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*,

477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled

to special latitude when defending against summary judgment motions,

they must establish more than mere "metaphysical doubt as to the

material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith*

*Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court

to consider whether *pro se* plaintiff understood nature of summary

judgment process).

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.*

*Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

warranted only in the event of a finding that no reasonable trier of fact

could rule in favor of the non-moving party.  *See Building Trades*

*Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002)

(citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511

(summary judgment is appropriate only when "there can be but one

reasonable conclusion as to the verdict").

C.    Plaintiff's Failure to Oppose Defendants' Motions

22

In response to defendants' pending summary judgment motions the plaintiff has filed no opposition papers.  Instead, on or about August 5, 2011, after the filing of those motions, Steptoe submitted a handwritten letter to Senior District Judge Neal P. McCurn advising the court "of [his] intention to abandon all claims against the defendants in this case", and further stating that he would not challenge defendant Hotel's motion for summary judgment or pursue this action any further.  Dkt. No. 131.  The issue to be addressed therefore is the illegal significance, if any, of this communication, and specifically whether it implies consent to the entry of summary judgment.

Under this court's local rules a party's failure to respond to a properly filed motion is generally regarded as the functional equivalent of consent to the granting of the motion.  N.D.N.Y.L.R. 7.1(b)(3).  Before such an unopposed motion may be granted, however, the court must first make a threshold finding that the moving party has met its burden of facially demonstrating entitlement to the relief requested.  *Id.*; *see McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).  In making that assessment it should be noted that the court must deem any facts set forth in defendants' Local Rule 7.1(a)(3) statements of material facts as

having been deemed admitted by the plaintiff in view of his failure to properly respond to those statements.  *See* N.D.N.Y.L.R. 7.1(a)(3); *see Elgamil v. Syracuse Univ.* No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

> D.   State Action

In its motion defendant Hotel argues, *inter alia*, that even if plaintiff's constitutional rights were violated, it does not bear potential liability for those violations since its conduct toward the plaintiff does not amount to state action, as required to establish a cognizable claim in this action.

Section 1983 provides a right of action against a party "who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, or immunities secured by the Constitution and Laws . . .."  42 U.S.C. § 1983.  One of the essential elements of a claim under that section is that the conduct complained of was committed by a person acting under color of state law.  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *Claudio v.*

24

*Sawyer*, 675 F. Supp. 2d 403, 407-408 (S.D.N.Y. 2009), *aff'd,* 409 Fed.

App'x 464 (2d Cir. 2011).

　　　To establish liability under section 1983, a plaintiff must prove

unlawful conduct which is "fairly attributable to the state."  *Lugar v.*

*Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S. Ct. 2744 (1982); *Dyno v.*

*Binghamton,* No. 3:09-CV-313 (TJM/DEP), 2009 WL 1663990, at *8

(N.D.N.Y. June 15, 2009) (McAvoy, S.D.J.).  Actions of a purely private

entity such as the defendant Hotel can be deemed fairly attributable to the

state when 1) the entity acts pursuant to the "coercive power" of the state

or is "controlled" by the state ("the compulsion test"); 2) the state provides

"significant encouragement" to the entity, the entity is a "willful participant

in joint activity with the [s]tate", or the entity's functions are "entwined" with

state policies ("the joint action test" or "close nexus test"); or 3) the entity

"has been delegated a public function by the [s]tate", ("the public function

test").  *Sybalski v. Independent Group Home Living Program, Inc.,* 546

F.3d 255, 257 (2d Cir. 2008) (citing and quoting *Brentwood Acad. v. Tenn.*

*Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 296, 121 S. Ct. 924 (2001))

(citations and internal quotation marks omitted); *see also Hollander v.*

*Copacabana Nightclub,* 624 F.3d 30, 34 (2d Cir. 2010); *Fabrikant v.*

*French*, No. 1:03-CV-1289 (DNH-DRH), 2010 WL 2774043, at *5

(N.D.N.Y. July 13, 2010) (Hurd, D.J.).

In this case, the plaintiff appears to urge application of the "joint

action test", asserting that the defendant Hotel and a state official, off-duty

police officer Otis, shared a common unlawful goal, agreeing to act

together jointly to deprive him of rights guaranteed by federal law.   The

record in this case, however, does not contain evidence from which a

reasonable jury could conclude that the Hotel and a state official shared a

common, unlawful goal and agreed to act together jointly to deprive

plaintiff of his civil rights.  The record discloses that at the relevant times

Pam Otis, the state official who plaintiff apparently claims was acting

together with defendant Hotel to deprive him of his civil rights, was acting

not as a Syracuse City Police Officer but rather as a private security guard

working for the Hotel.[9]  In this instance, the actions of defendant Hotel

toward the plaintiff were limited and do not give rise to a finding of joint

action.  The only action taken by Hotel employees in relation to plaintiff's

---

[9]      Throughout this litigation plaintiff has vociferously argued the
unlawfulness of permitting an off-duty police officer working in a security capacity at an
establishment at which alcoholic beverages are sold.  New York law specifically
provides that an off-duty police officer may engage in private employment outside of
regular working hours not exceeding twenty hours per week, provided that there is no
interference with his or regular duties.  *See* N.Y. General Municipal Law § 208-d.

arrest and prosecution was to request that he be prosecuted for trespass, which, standing alone, is insufficient to support a finding of joint action between representatives of the Hotel, as a private entity, and public officials to support a finding of liability under section 1983.[10]  *Cf. Parker v. Grand Hyatt Hotel,* 124 F. Supp. 2d 79, 88 (D.D.C. 2000); *Bang v. Utopia Restaurant,* 923 F. Supp. 46, 49 (S.D.N.Y. 1996).

In sum, even when construed on a light most favorable to the plaintiff, the record now before the court fails to support a finding of state action on the part of defendant Hotel, thereby warranting dismissal of all claims arising under section 1983 against that entity.

E.     Fourth Amendment Violation

Plaintiff's second and third causes of action allege Fourth Amendment violations against the City and the Hotel, respectively. Plaintiff's Fourth Amendment claim appears to stem from the alleged

---

[10]     It is worth noting that courts have frequently been called upon to determine whether off-duty police officers can properly be regarded as state actors for purposes of section 1983. *See, e.g., Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408-409 (S.D.N.Y.  Dec. 23, 2009); *Dean v. City of Buffalo*, 579 F. Supp. 2d 391, 404-405 (W.D.N.Y.2008).  Even if Officer Otis could be regarded as a state actor in this case, however, she is not a defendant in this case.  As a result, her actions can not form the basis for a finding of "joint action" by the defendant Hotel.

seizure by Pam Otis from bartender Sherry MacCombie of plaintiff's driver's licence, produced in response to MacCombie's request for identification prior to serving plaintiff alcohol.  Defendants maintain that this cause of action is deficient as a matter of law.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures.  *U.S. Const. Amend. IV.*  For Fourth Amendment purposes, a seizure represents a "meaningful interference with an individual's possesory interests" and property.  *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984); *see also United States v. Place,* 462 U.S. 696, 707-08, 103 S. Ct. 2637, 2645 (1983) ("[t]he manner in which the seizure . . . [was] conducted is, of course, . . . a vital part of the inquiry . . . .") (quoting *Terry v. Ohio*, 392 U.S. 1, 28, 88 S. Ct. 1868, 1993 (1968)).  The touchstone of a Fourth Amendment violation arising from a seizure is the forcible separation of property from an owner.  *Soldal v. Cook Cnty. Illinois*, 506 U. S. 56, 61, 113 S. Ct. 538 (1992) (citing *Jacobsen*); *see also Hale v. Henkel*, 201 U.S. 43, 76-77, 26 S. Ct. 370, 380 (1906). "The unlawfulness of an interference with an individual's possessory interest in property depends on the reasonableness of the seizure."  *Sheppard v. Beerman*, 18 F.3d

147, 152 (2d Cir. 1994) (citing *Soldal*, 506 U.S. at 71, 113 S. Ct. at 549).

Whether a seizure is unreasonable within the meaning of the Fourth

Amendment represents a fact-intensive inquiry. *Cooper v. State of*

*California*, 386 U.S. 58, 59, 87 S. Ct. 788, 790 (1967); *Preston v. United*

*States,* 376 U.S. 364, 367, 84 S. Ct. 881, 883 (1964).

The facts currently before the court reveal that plaintiff produced his

identification card in response to request from bartender MacCombie as a

prelude to selling him alcohol.  Such a request and production, even if by

a law enforcement officer, is entirely lawful as a precondition to the sale of

alcohol in order to confirm that the individual is eligible to purchase

alcohol.  *See* N.Y. ALCO. BEV. CONT. LAW § 65 (making it unlawful to sell

alcoholic beverages to any person under the age of twenty-one and

authorizing the affirmative defense to such violation that such person has

produced photographic identification); *see also Brown v. City of Oneonta,*

*New York*, 195 F.2d 111, 121 (2d Cir. 1999) ("[A] seizure does not occur

simply because a police officer approaches an individual and asks a few

questions.") (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct.

2382, 2386 (1991)), *cert. denied*, 534 816, 122 S. Ct. 44 (2001).  In this

instance, when Pam Otis asked to examine the card it was provided to her

briefly by bartender MacCombie.  The mere act of looking at a document

or property does not constitute an unlawful seizure since there is no

meaningful interference in such a case with the individual's possesory

interest.  *Arizona v. Hicks,* 480 U.S. 321, 324, 107 S. Ct. 1149, 1152-53

(1987); *see also Robinson v. Town of Colonie*, 878 F. Supp. 387

(N.D.N.Y. 1995).  Moreover, at no time did plaintiff object when his

identification was reviewed by off-duty police officer Otis.  Based upon

these facts no reasonable jury could conclude that plaintiff's Fourth

Amendment rights were violated.  *See Robinson*, 878 F. Supp. at 401-

402.  I therefore recommend that plaintiff's Fourth Amendment claims

against both defendants be dismissed.

     F.    <u>Procedural Due Process</u>

     Plaintiff's fifth cause of action accuses the defendant City of

depriving him of procedural due process. That cause of action appears to

contain multiple components, alleging that the plaintiff was 1) deprived of

his identification card without due process 2) was deprived of his liberty

during the period of off-duty police officer Pam Otis' questioning; 3) was

denied due process in connection with this arrest and interrogation; and 4)

was denied procedural due process as a result of a policy at the jail facility

in which he was held against inmates making telephone calls outside of the 315 area code.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process a plaintiff must show that he or she 1) possessed an actual liberty or property interest and 2) was deprived of that interest without being afforded constitutionally-sufficient process. *Oneida Indian Nation of New York v. Madison Cnty.*, 2011 WL 4978126, at *12, __ F.3d __ (2d Cir. Oct. 20, 2011) (citing *Swarthout v. Cooke*, – U.S. –, 131 S. Ct. 859, 861 (2011); *Adams v. Suozzi*, 517 F. 3d 124, 127 (2d Cir. 2008).  When a due process claim is predicated upon the deprivation of a property interest that deprivation must be more than *de minimis*.  *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, (1974); *see also Groves v. New York*, No. 9:09-CV-0412, 2010 WL 1257858, at * 9 (N.D.N.Y. Mar. 1, 2010) (Peebles, M.J.) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 1874 n.21 (1979) (quoting *Ingraham*)), *report and recommendation adopted*, 2010 WL 1257942 (N.D.N.Y. Mar. 26, 2010).

Addressing first the seizure of plaintiff's identification, it is clear that plaintiff's drivers license was not seized by police officer Otis by the

plaintiff; instead, bartender MacCombie asked to see identification, and plaintiff gave it to her.  The bartender handed the license to police officer Otis, who only briefly examined it and returned it to the bartender, who in turn gave it back to the plaintiff.  Defendant Hotel's Local Rule 7.1(a)(3) Statement (Dkt. No. No. 128-13) 40-42.  That brief encounter was nothing more than *de minimis* by any standard, and as such constitutionally insufficient to support a claim for denial of due process.  *See Redmond v. Garvey*, No. 91 Civ. 6777, 1998 WL 600992, at * 3 (S.D.N.Y. Sep. 10, 1998).

Turning to the questioning of the plaintiff by Pam Otis, even assuming that her actions constituted those of a state actor, there is no evidence in the record that would support a due process deprivation. Plaintiff does not allege, and the record does not disclose, that his liberty was restrained in any significant way.  Indeed, he does not even allege that he was involuntarily detained by Ms. Otis while being questioned.  In any event, the brief encounter occurring in the bar of the Genesee Grande Hotel was not of sufficient duration or character to support a finding of a liberty interest deprivation triggering the procedural due process requirements of the Fourteenth Amendment.

Plaintiff's due process claim surrounding his arrest and interrogation is similarly deficient.  Plaintiff's detention and interrogation stems from a lawfully filed criminal complaint and resulting arrest warrants.  These facts do not support a claim of due process deprivation against the complaining witnesses.  *See Fabrikant*, 722 F. Supp. 2d at 256; *see also Guadagni v. New York City Transit Auth.*, No. 08-CV-3163, 2009 WL 1910953, at *9 (E.D.N.Y. Jun. 30, 2009) (noting that allegations of false arrest and malicious prosecution state a claim only under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment) (quoting *Ambrose v. City of New York*, No. 02-CV-10200, 2009 WL 890106, at*16 n.9 (S.D.N.Y. Mar. 31, 2009)), *aff'd*, 387 Fed. App'x 124 (2d Cir. 2010).

The fourth prong of plaintiff's due process claim alleges that he was unable to make telephone calls outside of the (315) area code while held in a local jail facility.  There is nothing in the record to attribute that act to either of the defendants in this action.[11]

---

[11]   The court takes judicial notice that the Onondaga County Justice Center, in which plaintiff was presumably held in December of 2009, is operated by Onondaga County, and not by defendant City.

Similarly the record establishes that plaintiff was arrested and charged by trespass by Onondaga County personnel.  Defendant City therefore bears no

Accordingly, I recommend dismissal of plaintiff's procedural due process claims against both defendants.

G.    Equal Protection

In his fourth and sixth causes of action plaintiff alleges deprivation of equal protection against the defendant City and defendant Hotel, respectively.  The basis for that claim appears to be that the parties were engaged in racial profiling and treated him differently than they would have a non-minority frequenting at the Hotel because he is African-American.

The Equal Protection Clause directs state actors to treat similarly situated people alike.  *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.

_____

responsibility to any claim of due process denial arising from the arrest and prosecution.  *See* Defendant City's Local Rule 7.1(a)(3) Statement (Dkt. No. 126-1) ¶ 7.

34

Ct. 1756, 1767 (1987)).

In this instance, the record fails to contain evidence from which a reasonable jury could conclude that plaintiff was treated differently than other non-minority individuals as a result of his race.  To support an equal protection claim a plaintiff must produce evidence establishing that discriminatory racial intent was the most likely motivation for the action in question, or that the defendants' alternative explanation for its action is impossible.  *Robinson*, 878 F. Supp. at 402 (citing *Prompt Courier Serv., Inc. v. Koch*, No. 89 Civ. 3053, 1990 WL 100904, at *8 (S.D.N.Y. Jul. 12, 1990)) (other citation omitted).  Here, there is no evidence showing that plaintiff was confronted and later prosecuted for trespass solely as a result of his race.  *See Brown*, 195 F.3d at  120-21.  Instead, the record before the court shows that MacCombie asked plaintiff for identification after he indicated that he would like to buy a drink; after producing his identification, plaintiff left without purchasing anything.  Furthermore, the evidence shows that plaintiff's arrest was initiated by Otis only after plaintiff returned to the Hotel at 11:45 p.m., complaining to an employee at the front desk about the incident that had occurred earlier in the bar, and police officer Otis' investigation revealed that on several prior occasions

plaintiff had been asked not to return to the premises unless he was a guest or desired to make a purchase.  Thus, it seems clear that defendant's actions were directed at plaintiff because of his conduct, including odd behavior exhibited in the past, and were in no way motived by a discriminatory intent.

Because the record is devoid of any evidence that plaintiff was subjected to discrimination based upon his race, I recommend dismissal of plaintiff's equal protection causes of action.

### H.   Intentional Infliction of Emotional Distress

Plaintiff's complaint also contains pendent state law claims for intentional infliction of emotional distress ("IIED") against both defendants. In their motions, defendants request dismissal of those claims.[12]

The law in New York concerning claims for intentional infliction of emotional distress ("IIED") is well-settled; "in a cause of action for intentional infliction of emotional distress, a plaintiff must plead and prove four elements; 1) extreme and outrageous conduct; 2) the intentional or reckless nature of such conduct; 3) a causal relationship between the

---

[12]      In its memorandum, defendant City does not directly address this cause of action.  *See* Defendant City's Memorandum (Dkt. No. 126-8).  It is clear, however, that the City seeks dismissal of plaintiff's complaint in its entirety and therefore implicitly challenges this cause of action.

conduct and the resulting injury; and 4) severe emotional distress."
*Carlson v. Geneva City School Dist.*, 679 F. Supp. 2d 355,  372 (W.D.N.Y.
2010) (quoting *Mitchell v. Giambruno*, 35 A.D.3d 1040, 1041, 826
N.Y.S.2d 788, 789 (3rd Dep't 2006) (citations omitted)) (internal
quotations omitted).  The requirements of this standard are exceedingly
rigorous, and "[l]iability has been found only where the conduct has been
so outrageous in character, and so extreme in degree, as to go beyond all
possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community."  *Murphy v. American Home Prod.
Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232 (1983) (citing Restatement
(Second) of Torts § 46, cmt. d). Consequently, the governing standard is
extremely demanding and difficult to satisfy, resulting in strict application
of these elements by New York courts.  *See Gay v. Carlson*, 60 F.3d 83,
90 (2d Cir. 1995).

As a judge of the Southern District observed in *Lydeatte v. Bronx
Overall Economic Development Corp.*, in addressing a motion to dismiss
an IIED claim in an employment discrimination action,

> [i]t is particularly difficult to withstand a motion to dismiss
> claims for intentional infliction of emotional distress in the
> employment law context. New York Courts are reluctant to
> allow these claims in employment discrimination cases. The

> courts are wary of allowing plaintiffs to recharacterize claims for wrongful or abusive discharge, which are not recognized under New York law, as claims for intentional infliction of emotional distress. . .. As a result, New York courts routinely dismiss claims for intentional infliction of emotional distress in the employment context, except where such claims were accompanied by allegations of sex discrimination and, more significantly, battery [,and] . . . the New York Court of Appeals has rarely allowed a plaintiff to sustain a claim for intentional infliction of emotional distress in the employment law context.

*Lydeatte v. Bronx Overall Economic Dev. Corp.*, No. 00CIV5433, 2001 WL 180055, at *1 (S.D.N.Y. Feb. 22, 2001) (internal quotations and citations omitted); *see also James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001), ("[e]ven a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law."); *La Duke v. Lyons*, 250 A.D.2d 969, 973, 673 N.Y.S.2d 240, 244 (3d Dep't1998) ("even assuming the truth of the allegation that the employees intentionally relayed false information to the hospital, the conduct was not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress.").

The record in this case fails to disclose conduct that could be determined by a reasonable factfinder to meet the strict standard for providing an IIED claim.  Accordingly, I recommend that plaintiff's IIED

causes of action be dismissed.

I.     Negligence

Plaintiff's remaining cause of action sets forth a pendent state law claim of negligence.  The gravamen of that cause of action is that the City was negligent in failing to enforce its own policies regarding secondary employment as well as restrictions under the New York Alcohol Beverage and Control Law related to such work.  Arguing that plaintiff is mistaken in his assertion regarding secondary employment by police officers, defendant City seeks dismissal of this cause of action.

"In every federal case, the party bringing the suit must establish standing to prosecute the action."  *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 124 S. Ct. 2301 (2004).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975).  The standing requirement is born partly of " 'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.' " *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315 (1984) (quoting

*Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-1179 (C.A.D.C.1982) (Bork, J., concurring)).  In order to establish standing for purposes of the constitutional "case or controversy" requirement, a plaintiff "must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S. Ct. 1601, 1607 (1979), and that the injury "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924 (1976).

Here, it is doubtful that plaintiff has suffered the requisite tangible effects of the City's alleged failure to enforce local policy and state law regarding secondary employment to assert a claim related to that conduct. Even assuming plaintiff does possess the requisite standing, moreover, it is clear that his claim lacks merit.  As was previously discussed, New York General Municipal Law § 208-d expressly authorizes members of a police force to engage in extra work outside their regular hours of duty.  While section 128 of the New York Alcoholic Beverage Control Law prohibits police officers from having a direct or indirect interest in the manufacture or sale of alcoholic beverages, or to offer for sale, or recommend to any

licensee any alcoholic beverages, section 128-a provides that the New York State Liquor Authority "shall promulgate such rules and regulations as may be necessary to provide that it shall not be unlawful for a police officer employed in this state, having written permission and consent from his commanding officer, to work in a premises licensed to sell beer at retail for off-premises consumption . . .."  N.Y. ALCO. BEV. CONT. LAW §§ 128, 128-a.[13]  Though specifically addressed to authorizing off-duty work on retail premises selling beer,  New York courts have stated that this provision does not "otherwise prohibit police officers from working for any employer in or about a licensed premise, no matter how incidental is the work to the sale of alcoholic beverages."  *Rotunno v. City of Rochester*, 120 A.D.2d 160, 164, 507 N.Y.S.2d 924 (4th Dep't 1986), *aff'd*, 71 NY.2d 995, 524 N.E.2d 876 (1988).

In the case at bar, the City has produced undisputed evidence showing that Ms. Otis was authorized, in accordance with the Syracuse Police Department Rules and Regulations, to engage in secondary employment at the Hotel to provide general physical security on the Hotel

---

[13]     In accordance with this provision, the New York Liquor Authority promulgated a rule permitting a police officer having written permission and consent from his or her commanding officer to engage in such off-duty work.  *See* 9 N.Y.C.R.R. § 100.1.

grounds.  In view of the foregoing, there is no basis for the plaintiff's claim that the City was negligent in failing to ensure compliance with New York State Law.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

By his actions plaintiff has demonstrated disinterest in pursuing his claims in this lawsuit, and in addition has flagrantly violated a court directive, given twice, that he provide a proper oath to responses to the defendant City's interrogatories.  In addition, plaintiff failed to appear at a hearing scheduled to address an application by defendant City for sanctions based upon that failure.  Based upon the foregoing, and exercising both the inherent powers of the court and its authority under Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure, the court could direct dismissal of plaintiff's complaint for failure to comply with a court order and to diligently prosecute his claims.  I have chosen, however, not to recommend disposition of plaintiff's claims on this procedural basis; instead, given my finding that defendants are entitled to judgment as a matter of law dismissing each of plaintiff's claims, I recommend that defendants' motions for summary judgment be granted and that the defendants be awarded costs in connection with the City's

discovery-related motion.  It is therefore, hereby respectfully

RECOMMENDED, that the summary judgment motions of defendant the City of Syracuse (Dkt. No. 126) and The Genesee Grande Hotel (Dkt. No. 128) be GRANTED, and that plaintiff's complaint in this action be DISMISSED; and it is further hereby

RECOMMENDED that the clerk be directed to enter judgment in favor of the defendants and against the plaintiff in the amount of $3,235, the sum awarded in costs and attorney's fees on July 14, 2011 (Dkt. No. 24); and it is further hereby

RECOMMENDED that defendants be awarded costs and attorney's fees associated with defendant City's recent motion for sanctions, the court finding no basis to conclude that plaintiff's failure was substantially justified or that there are other circumstances that make an award of expenses unjust, and that defendants be granted the opportunity to submit affidavits and exhibits in support of their applications for costs and attorney's fees within fourteen days of the issuance of an order in connection with this report and recommendation, and that plaintiff be permitted to respond in opposition to the request for costs and fees within fourteen days thereafter.

43

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      November 1, 2011
            Syracuse, NY